**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION**

**CHARLES SMITH, #91945**                                          **PLAINTIFF**

**VS.**                              **CIVIL ACTION NO.: 3:17CV157-CWR-LRA**

**WARDEN WENDELL BANKS, ET AL**                        **DEFENDANTS**

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

This cause is before the undersigned United States Magistrate Judge for a

recommendation on the Motion for Summary Judgment [Doc. #112] filed by Defendants.

After a review of the pleadings and the applicable law, as augmented by Plaintiff Charles

Smith's testimony at the omnibus hearing, the undersigned recommends that the motion

should be granted. The reasons for that recommendation are set forth hereafter.

**STATEMENT OF FACTS**

Jurisdiction of this case is based upon 42 U.S.C. §1983. Plaintiff was housed in

the custody of the Mississippi Department of Corrections [MDOC] in the Central

Mississippi Correctional Facility [CMCF] when he filed this lawsuit on March 9, 2017.

According to Smith, when he was housed at CMCF, showers in his housing unit were

always filthy. There were bugs and vermins inside the showers, and the showers were

covered with dirt and filth at all times. Plaintiff believes that the filth caused him to catch

a very bad rash. He was treated by the doctor at CMCF and was prescribed medications

and creams for the rash. At the time, he was undergoing chemotherapy, and his treating

physicians at the University Medical Mall had warned him that cleanliness was important

1

due to potential infections. These doctors called the rash a fungus and refilled the prescriptions initially given by the prison doctor.

The filthy showers were one of Smith's primary issues in this case, according to Smith. He gave testimony regarding an incident involving Defendant Officer Aaron Jerome Spann of the K-9 unit. According to Smith, Officer Spann hurt his finger when he was conducting a shakedown of his unit. He and the other officers had "lots of hostility" and handled him roughly. His finger was not broken and has healed. Plaintiff did not include these allegations about his finger in his pleadings.

Smith also alleged that he was maced by Defendant Officer Issac Edwards. This charge is contained in Plaintiff's Amended Complaint [27, pp. 7-8]. He contends that Edwards was passing out lunch trays through the flaps of the cells. Smith and another inmate were in a verbal confrontation. Edwards warned them that if they did not "shut up," he would come back and take their property. When Edwards returned, he told Smith to "cuff up." Smith refused to do so, and Edwards opened the flap of the door and sprayed Smith with mace. Smith was taken to the clinic and treated thereafter. Smith concedes in his response [117, pp. 2-3] that this claim should be dismissed.

Plaintiff's request to dismiss certain Defendants was granted by the Court on November 26, 2018 [123]. Plaintiff later asked that these persons be reinstated as Defendants; he had thought they would settle but did not [124]. The Court dismissed these Defendants, including William Moody, Carrie Williams, Lamonica Easterling, and Ronald King. That Order has not been rescinded.

Smith named numerous Defendants in this lawsuit and the details of his claims are not set forth fully herein.  Smith's testimony and his written response to the Motion for Summary Judgment confirm that his primary claim before the Court is his contention that the filthy condition of the showers constitutes an Eighth Amendment violation.  His sworn testimony given at the June 26, 2018, omnibus hearing is docketed at [95].  At this hearing, Smith testified that he had been in maximum security, in C custody level, since 2014.  This is because he was convicted of murder, plus he has been in altercations with other prisoners during his incarceration.  Further, Smith admitted that he has threatened to kill correctional officers and has been disrespectful to them on many occasions.

**SUMMARY JUDGMENT STANDARD**

The familiar standard for the entry of summary judgment comes from Fed. R. Civ. P. 56(a), which requires its entry "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Summary judgment is appropriate "against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The moving party "bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact."  *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005).

When a motion for summary judgment has been made and supported by the pleadings and affidavits as provided in Rule 56(c), the burden shifts to the party opposing

the motion to put forth evidence demonstrating that a trial is required because a disputed issue of material fact exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986); *Norman v. Apache Corp.*, 19 F.3d 1017, 1023 (5th Cir. 1994). In satisfying this burden, however, the opposing party must do more than simply establish doubt as to the material facts. The party opposing summary judgment may not "rest upon the mere allegations or denials of the adverse party's pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." *Matsushita.* at 586, n. 11; *see also Beard v. Banks*, 548 U.S. 521, 529 (2006); *Aduddle v. Body*, 277 F. App'x 459, 460 (5th Cir. 2008); Fed.R.Civ.P. 56(e).  Pro se pleadings should be given a liberal construction and held to a less stringent standard than attorney drafted pleadings, *Haines v. Kerner,* 404 U.S. 519, 520–21 (1972); *Coleman v. Lincoln Parish Detention Center*, 858 F.3d 307, 309 (5th Cir. 2017). However, the plaintiff still must present evidence to defeat a properly supported summary judgment motion and may not rely upon conclusory allegations and unsupported assertions. *Coleman,* 858 F.3d at 309; *see also Propes v. Quarterman*, 573 F.3d 225, 231 (5th Cir. 2009) ("A *pro se* litigant gets a liberal reading of his pleadings, but the basic procedural obligations still apply.").

## ANALYSIS OF THE LAW

### 1.  ASSAULT/CHEMICAL AGENT CLAIM

Defendants contend that Plaintiff's claims regarding Defendant Isaac Edwards spraying him with mace have not been exhausted and should be dismissed.  Plaintiff apparently agrees with the analysis, as he admits in his Response [117, pp. 2-3] that the mace claim should be dismissed.

As Defendants point out, Plaintiff filed his Complaint on March 9, 2017, and the incident occurred on March 23, 2017, two weeks later. [27, p. 7]. He filed his grievance with the Administrative Remedy Program [ARP] on April 10, 2017 [112-1]. The ARP was rejected because he attempted to file it on behalf of himself and other inmates. [112-1, p. 2].

The applicable section of the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997(e), provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." The PLRA governs Smith's claims. Accordingly, Smith was required to properly complete the ARP process in its entirety before filing suit under §1983.

The Supreme Court has confirmed that exhaustion is mandatory under the PLRA and that "unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007). The Fifth Circuit has applied that holding, recognizing that "the PLRA pre-filing exhaustion requirement is mandatory and non-discretionary," and that "district courts have no discretion to waive the PLRA's pre-filing exhaustion requirement." *Gonzalez v. Seal,* 702 F.3d 785, 787-88 (5th Cir. 2012) (*per curiam*); *Moussazadeh v. Texas Dep't of Criminal Justice*, 703 F.3d 781, 788 (5th Cir. 2012) (quoting *Gonzalez*). Summing up the applicable law in *Gonzalez*, the court concluded:

> After *Woodford* and *Jones*, there can be no doubt that pre-filing exhaustion
> of prison grievance processes is mandatory. . . . District courts have no

discretion to excuse a prisoner's failure to properly exhaust the prison grievance process before filing their complaint. It is irrelevant whether exhaustion is achieved during the federal proceeding. Pre-filing exhaustion is mandatory, and the case must be dismissed if available administrative remedies were not exhausted.

*Gonzalez*, 702 F.3d at 788.

The law clearly requires that Smith must have (1) filed a timely grievance regarding the incident and (2) completed the grievance process *prior to* submitting his Complaint. He admittedly failed to do so. All claims which arose after he filed this lawsuit (including the mace incident) should be dismissed.

## 2. EIGHTH AMENDMENT CONDITIONS OF CONFINEMENT CLAIMS

Smith contends that the conditions of his confinement at CMCF are so inadequate that they violate his rights under the Eighth Amendment of the United States Constitution. Specifically, he is most concerned that the showers at the facility are "very filthy… to the degree where there were bugs and like vermins inside of such." [95, pp. 6-7.] He says he complained to the superintendent and was told that they would be cleaned. They were not cleaned, and Smith ended up catching a "very bad rash behind the filthiness within that particular shower." *Id.* at p. 7. He was treated by the CMCF doctor and prescribed medications, but the doctor "didn't actually say that it [the rash] come from the filthiness of a shower." *Id.* Smith testified that he had the rash "for quite a few days" and that he was "really assuming that it come from the shower…." *Id.* at 7-8.

Smith testified that he had been taking chemotherapy at the time, and his doctors at the University Medical Mall had expressed the importance of sanitation. He was subject to getting infections because of his cancer and treatment. *Id.* at 8. One of those

doctors called it a type of fungus and continued the medications previously prescribed at CMCF. After Smith had complained so much, he was allowed to go into the showers and clean and scrub them himself. *Id*. at 16. But by then, he had already caught the rash. Plaintiff is now in remission from his cancer.

Smith also complained that his right pinky finger was injured during a shakedown as Officer Spann was "handling him." *Id*. at 8-9. He was not pleased with his medical care provided for his finger. Although an x-ray was taken, he was never given the report. Although Smith testified about the injury to his finger, his pleadings do not contain this claim.

In the opinion of the undersigned, Plaintiff's allegations, taken in a light most favorable to him, and as amplified by his testimony, simply do not rise to the level of a constitutional violation. Section 1983 prohibits the deprivation of constitutional rights under color of state law. As the United States Supreme Court has taught, the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment. *Helling v. McKinney*, 509 U.S. 25, 31 (1993). The Eighth Amendment applies to the State of Mississippi and its agencies by virtue of the Due Process Clause of the Fourteenth Amendment, and it prohibits the infliction of cruel and unusual punishment for crimes. *Wilson v. Seiter*, 501 U.S. 294, 296-97 (1991). It requires prison officials to provide humane conditions of confinement. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). The amendment's protection covers deprivations that are not specifically a part of a prison sentence, but are suffered as the result of imprisonment. *Id*. at 297 (citing *Estelle v. Gamble*, 429 U.S. 97 (1976)). Any punishment that is

"incompatible with 'the evolving standards of decency that mark the progress of a maturing society'" is repugnant to the Eighth Amendment. *Estelle*, 429 at 103 (quoting *Trop v. Dulles*, 356 U.S. 86, 101 (1958)).

When a complaint involves conditions that are an element of confinement, as opposed to those that are a part of punishment, an inquiry must be made into the state of mind of the defendant prison officials. *Wilson*, 501 U.S. at 300-02. For such a claim to be viable, the official must exhibit a deliberate indifference to the welfare of the inmate. *Id.* at 303. The elements of proof in a case involving conditions of confinement are twofold and include: (1) an objective component, under which the inmate must prove his exposure to a harm or injury that violates contemporaneous standards of decency; and (2) a subjective component, under which the inmate must prove that the prison authorities' current conduct evidences a deliberate indifference to that exposure. *Helling*, 509 U.S. at 35-36. In other words, under the objective component, the deprivation alleged must be sufficiently serious, resulting in a substantial risk of serious harm. *Farmer*, 511 U.S. at 834. Under the subjective component, the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. *Id.* at 837.

The burden of showing deliberate indifference is a high one, and difficult to meet. *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006). A prisoner must show that the inflicting officer has exhibited "deliberate indifference" to the conditions. *Wilson*, 501 U.S. at 303. Mere negligence does not satisfy the "deliberate indifference" standard. *Id.* The

prisoner must suffer from an **extreme deprivation** of any "minimal civilized measure of life's necessities." *Id.* at 304. In the opinion of the undersigned, being housed in a jail with dirty showers does not equal an extreme deprivation of life's necessities. Plaintiff was fed, clothed, provided exercise, medical care and other privileges. He was allowed to clean the showers himself after he complained about the sanitation. His rash was treated by medical providers at the prison and at the Jackson Medical Mall and did not last for a long period of time. His pinky finger was not seriously hurt, and he suffered from no permanent injury from either condition. No Defendant purposely caused his rash.

In Plaintiff's case, neither the objective or subjective components can be met. It is obvious that these Defendants were not attempting to punish Plaintiff by the conditions of the CMCF. Indeed, Plaintiff does not charge that that is the case. Plaintiff testified that he was provided medical care on a regular basis during this period of time. He was given medicine for his rash, x-rays for his finger injury, and treated for his cancer. Cleaning supplies were provided. Plaintiff was not deprived of life's necessities, such as food and clothing and medical care. Being housed under the conditions described by Plaintiff would not meet the high standard required. Even though Plaintiff did suffer from cancer during his incarceration, dirty showers did not pose an unreasonable risk to his future health.

As Defendants point out, there are many cases finding that dirty showers, rashes and minor skin conditions, fail to state a constitutional claim. The injuries from the rashes and skin conditions are found to be *de minimis. See, e.g., Al-Zulu v. GEO Grp.,* Civ. No. 4:09cv176-FKB, 2013 WL 960123, at *5 (S.D. Miss. Mar. 12, 2013) (dirty showers did

not cause injury*); *Skinner v. Quarterman,* Civ. No. 9:09cv130, 011 WL 13131162, at *9 (E.D. Tex. Aug. 9, 2011) (dismissing complaint regarding lack of or delay in laundry service; plaintiff's minor skin condition *de minimis*); *Covarrubias v. Foxworth*, 2016 WL 4836864, at *4 (E.D. Tex. Sept. 14, 2016) (a rash that lasted two months is *de minimis* injury); *Holder v. Herbert*, Civ. No. 07-1206, 2007 WL 4299996, at *3 (W.D. La. Nov. 8, 2007) (rash on plaintiff's leg caused by dirty shower is *de minimis*). *See also Gins v. J.B. Evans Correctional Center*, Civ. No. 08-1475, 2009 WL 196199 (W.D. La. Jan. 23, 2009) (a rash developed because of cold showers is *de minimis*); *Stanberry v. Coahoma County Jail,* No. 2:09cv85, 2009 WL 1766819 (N.D. Miss. June 22, 2009) (red bumps developed due to ant bites do not meet physical injury requirement); *Knight v. McGee*, No. 2:06cv129, 2007 WL 3506462 at *4 (S.D. Miss. Nov. 14, 2007) (beetle bite that caused face to swell insufficient to state a claim); *McCarty v. McGee*, No. 2:06cv113-MTP, 2008 WL 341643 at *3 (S.D. Miss. Feb. 5, 2006) (prisoner developing athlete's foot and ringworm caused by using shower with fungus and mold does not rise to Eighth Amendment violation).  The cases analyze such allegations as either not causing more than a *de minimis* injury or because there was no deliberate indifference on the part of prison officials.

To receive a money judgment against these officials because of prison conditions, a Plaintiff ordinarily must show actual injuries and a deliberate intent to harm on the part of Defendants.  Having a rash that is treated and does not last long does not pose an unreasonable risk to Plaintiff's future health.  Once Plaintiff could clean his shower, any further exposure to a dirty shower is avoidable; any future injury is merely a speculative

possibility.  Under the circumstances, wherein Plaintiff has not set forth any fact or testimony with which to show an intent to punish, or deliberate indifference, on the part of these individuals, the conditions complained of do not rise to the level of an Eighth Amendment or Fourteenth Amendment violation.

The undersigned also finds that Plaintiff's claim regarding his pinky finger injury does not rise to the level of an Eighth Amendment violation under the circumstances of this case.  However, because the claim is not contained in his Complaint or Amended Complaint, it is not properly before the Court and shall not be fully addressed herein.

For these reasons, the undersigned recommends that Defendant's Motion for Summary Judgment [112] be **granted** and that Charles Smith's Complaint should be dismissed.  Final Judgment in favor of all Defendants should be entered.

## NOTICE OF RIGHT TO APPEAL/OBJECT

Pursuant to Rule 72(a)(3) of the Local Uniform Civil Rules of the United States District Courts for the Southern District of Mississippi, any party within 14 days after being served with a copy of this Report and Recommendation, may serve and file written objections.  Within 7 days of the service of the objection, the opposing party must either serve and file a response or notify the District Judge that he or she does not intend to respond to the objection.

The parties are hereby notified that failure to file timely written objections to the proposed findings, conclusions, and recommendations contained within this report and recommendation, shall bar that party, except upon grounds of plain error, from attacking

on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  28 U.S.C. § 636, Fed. R. Civ. P. 72(b); *Douglas v. United Services Automobile Association*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

Respectfully submitted, this the 7th day of June 2019.


\_\_\_\_\_/s/Linda R. Anderson_____
UNITED STATES MAGISTRATE JUDGE